# EXHIBIT A

**NOTICE OF REMOVAL**

Electronically FILED by
Superior Court of California,
County of Los Angeles
7/16/2024 8:07 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Galicia, Deputy Clerk

Chase T. Tajima (SBN 304063)
*chase@trepaniertajima.com*
Gregory E. Eisner (SBN 190135)
*greg@trepaniertajima.com*
TRÉPANIER TAJIMA LLP
4605 Lankershim Blvd., Suite 540
North Hollywood, California 91602
Telephone: (323) 487-1101

Attorneys for Plaintiff
M.M.

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

M.M., an individual

    Plaintiff,

    v.

HAO ZHENG, an individual; HOLLYWOOD
AND VINE RESIDENCES ASSOCIATION, a
California nonprofit corporation; and DOES 1-30,

    Defendants.

Case No. 24STCV17698

**VERIFIED COMPLAINT**

Plaintiff M.M. (the name of the Plaintiff will be kept confidential due to the sensitive nature of certain allegations) complains and alleges as follows:

**PARTIES**

1.    Plaintiff is an individual residing part-time in the County of Los Angeles, State of California and part-time in Providence, Rhode Island.

2.    Defendant Hao Zheng is an individual residing part-time in Portugal and part-time in Los Angeles and is the owner of real property located at 6250 Hollywood Boulevard, Hollywood, CA, Unit 4k in the County of Los Angeles, State of California.

3. Defendant Hollywood and Vine Residences Association (the "Association") is a non-profit corporation whose members are owners of condominiums commonly known as the Residences at W Hollywood located 6250 Hollywood Boulevard, Hollywood, CA (the "W Residences").

4. Defendants DOES 1-30 inclusive, are unknown to Plaintiff, who therefore sues these by fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated as a fictitiously named Defendant is, in some manner, responsible for the events and happenings hereinafter alleged and caused or contributed to the damage done to Plaintiff as hereinafter set forth in each cause of action or has possession of the vehicles and certificates of title that are the subject of this complaint. Plaintiff will seek the Court's leave to amend this complaint to allege such true names and capacities when they have been ascertained.

5. Zheng, the Association, and DOES 1-30, inclusive, are collectively referred to as "Defendants."

6. Jurisdiction and venue are proper in California and the Los Angeles County Superior Court, respectively, because Plaintiff is a Los Angeles resident and substantially all of the facts of this case occur in or are directed at Los Angeles, California, specifically the W Residences.

## INTRODUCTION

7. Plaintiff lived in a condominium in Los Angeles, California, owned by his romantic partner, Defendant Zheng. When Plaintiff discovered Defendant Zheng's video camera (hidden in an air conditioning vent) spying and recording him in his bedroom in the condominium, Plaintiff broke off the romantic and personal relationship with Zheng. Zheng, a fantastically wealthy man, used his power and influence to retaliate against Plaintiff. First, upon information and belief, while Plaintiff was away on a business trip, Zheng instructed the Defendant Association to deactivate Plaintiff's fob access to the W Residences where Plaintiff resides. This was an unlawful self-help eviction carried out by both Defendants, which deprived Plaintiff of his personal belongings in the Condo (defined below), including his entire wardrobe. The police previously informed Defendants that they could not use a self-help strategy to evict Plaintiff. They did so anyway.

8. Next, while Plaintiff was away on a business trip, Zheng stole a co-owned Range Rover SUV that Zheng gave to Plaintiff as a gift, depriving Plaintiff of transportation. Zheng somehow removed

Plaintiff's name from the title to the Range Rover without Plaintiff's consent.

9.      Finally, Zheng refused to pay Plaintiff hundreds of thousands of dollars for childcare services and expenses that Plaintiff incurred over 15 months of caring for Zheng's biological child.

10.     This lawsuit seeks legal redress for Zheng's despicable (and illegal) retaliatory conduct and seeks to hold the Association accountable for facilitating a self-help eviction that the Association knew was in violation of California law.

## FACTUAL BACKGROUND

## ZHENG PURCHASED A RESIDENCE FOR PLAINTIFF TO LIVE IN

11.     Plaintiff and Zheng previously were romantic partners who planned to be married. Zheng mostly lives in Portugal. Plaintiff is an esteemed tenured professor and internationally known scholar at the University of California Los Angeles. Plaintiff splits time between Los Angeles and Providence, Rhode Island. In early 2023, Zheng agreed to purchase Unit 4k in the W Residences (the "Condo") for Plaintiff to live in. Zheng originally said that he would consider moving into the Condo with Plaintiff, but that was just a fleeting thought, and soon after Zheng decided that he would never live or reside in the Condo as Zheng "abhors Los Angeles" and owns approximately fifteen real properties in Portugal, Greece, and elsewhere around the world. Zheng purchased the Condo for Plaintiff to reside in along with Zheng's three-year old son. Plaintiff and Zheng would continue their long-distance relationship.

12.     Plaintiff witnessed Zheng physically and mentally abuse his son, which upset Plaintiff greatly. Plaintiff insisted that Zheng seek treatment for his abusive behaviors and after discussion with Zheng agreed that he would take care of Zheng's son for a couple of months while Zheng underwent treatment. Zheng agreed to seek treatment and pay Plaintiff for his time and expenses incurred to care for a three-year old boy. Plaintiff agreed to begin caring for Zheng's son in Rhode Island on or about December 2022, prior to the purchase of the Condo.

13.     On or about May 8, 2023, Zheng purchased the Condo in his own name, although initially there were discussions between the two about including Plaintiff on the deed as a co-owner as shown on some of the initial documents pertaining to the sale, such as the homeowner's insurance binder, the home inspection report, and escrow documents such as the estimated closing statement. Zheng elected to purchase the Condo without Plaintiff's name being on the title documents. Notwithstanding that Plaintiff

was not going to be on the title to the Condo, Zheng agreed that Plaintiff would reside in the Condo as Zheng's tenant, without monetary rental, condo association, or utility payments owed. Zheng also agreed to provide Plaintiff with car insurance in Plaintiff's name only. Plaintiff took possession and started moving into the Condo on or about May 9, 2023. Zheng continued to reside in Portugal and was doing business in China. Zheng's son resided with Plaintiff in the Condo. Plaintiff slept in the master bedroom while Zheng's son slept in the second bedroom.

14.     While Plaintiff was a resident in the Condo, the Defendant Association respected Plaintiff as a *bona fide* resident by, among other things, assisting with Plaintiff's move-in, orientation and association-specific documents that all new residents must complete and sign, providing Plaintiff with keys, providing Plaintiff with a resident fob (which granted access into the main building, use of the elevators, and access to the rooftop pool and gym facilities), providing Plaintiff with a mailbox key, providing an access card to the W Residence garage with parking decal for Plaintiff's car, asking Plaintiff for payment of Association dues and electric bills, facilitating the valet service for Plaintiff's Range Rover vehicle, allowing Plaintiff's family and friends up to his unit, receiving Plaintiff's packages and mail, addressing and communicating with Plaintiff as a resident, and inviting Plaintiff to resident-only events (4th of July, Halloween, New Years Eve, Memorial Day, etc., events) and complimentary resident-only social gatherings at local restaurants, with full resident privileges, such as complimentary day passes to the Aster, a luxury boutique hotel and members' club in Hollywood and Equinox gym. Pursuant to Plaintiff's agreement with Zheng, Plaintiff provided Zheng's son with round the clock childcare. Several months passed, but Zheng did not seek treatment for his abusive behaviors as agreed. After six months, Zheng still had not obtained treatment as agreed. Plaintiff was not willing to abandon Zheng's son or force Zheng to take him back because Plaintiff rightly feared Zheng's son would be abused if Plaintiff returned him to Zheng against Zheng's will. Plaintiff therefore continued to care for Zheng's son full time. Zheng also informed Plaintiff that he would not be permitted to come into the U.S. for a two-year period because he violated the obligations under his tourist visa. Plaintiff rearranged his entire life as a successful academic, including stopping his work-related travel (despite having ongoing research projects in 11 international countries at the time), so he could provide Zheng's son with all of his needs, including schooling/homework, preparing all of his meals, packing his lunch for school, taking him to

and picking him up from school Monday through Friday, paying for his medical, dental and vision insurance, and clothing, sports and other extracurricular activities, in addition to love and support.

15.     Zheng did not reimburse any of Plaintiff's reasonable and necessary time and expenses as agreed. On October 10, 2023, Plaintiff sent Zheng a detailed invoice for his time and expenses. Zheng confirmed that he received the invoice from Plaintiff and that more invoices would not be necessary. Zheng specifically told Plaintiff, "let's talk about [Zheng's son's] alimony because I don't want to get that kind of bill all the time." But Zheng did not pay Plaintiff anything for childcare services or reimburse expenses. Zheng's son remained with Plaintiff for a total of sixteen months with no compensation for his service and expenses caring for Zheng's son twenty-four hours a day, seven days a week. In total, Zheng owes Plaintiff hundreds of thousands of dollars (the specific amount to be proven at trial) for Plaintiff's full-time care of Zheng's son for approximately sixteen months.

**PLAINTIFF LEARNED THAT ZHENG HAD BEEN SPYING ON HIM WITH A HIDDEN CAMERA IN PLAINTIFF'S BEDROOM**

16.     On or about November 2, 2023, Plaintiff discovered a smart camera hidden in the large air conditioning vent in his bedroom at the Condo with a blinking light, demonstrating that it was live and working. The hidden camera was connected to the internet and a power source from the outlet below and hidden by the huge wall-mounted television. The smart camera was directly facing Plaintiff's bed, and had 360° coverage, with human/motion detection, permitting Zheng to view the Plaintiff in any area of his bedroom and bathroom. The camera could livestream video and voice, as well as record and store videos. The video recording was done completely without Plaintiff's knowledge or consent. Horrified, Plaintiff immediately took pictures of the camera, disconnected the camera and unplugged the modem and router from the power source so that the internet connection would be disabled at the Condo. Plaintiff was never given access to the internet in the Condo or provided with a password to use the internet; when Plaintiff was at the Condo, Plaintiff used his mobile phone to access the internet on other devices.

17.     On or about November 15, 2023, via text message, Zheng questioned Plaintiff about why the internet was down and asked him to look into it. Zheng acknowledged in various text messages and via phone calls that he installed the camera and had access to watch and listen to the audio and video

feed. Plaintiff, feeling unsafe and violated in his own bedroom (where there is certainly a reasonable expectation of privacy), ended his relationship with Zheng shortly thereafter. However, Plaintiff continued to reside at the Condo and continued to care for Zheng's son, while Zheng remained in Portugal.

### ZHENG RETALIATED BY LOCKING PLAINTIFF OUT OF THE CONDO WHILE PLAINTIFF WAS AWAY ON A WORK-RELATED TRIP

18.     On or about February 14, 2024, Valentines Day, Zheng returned to Los Angeles to attempt to rekindle the relationship with Plaintiff. Given the aforementioned history, Plaintiff refused to restart the romantic relationship.

19.     On or about February 15, 2024, fearing that Zheng would try to lock him out of the Condo (as Zheng threatened), Plaintiff called the police who met with Plaintiff, Zheng, and the Association representatives at the W Residences. The police advised them all (to the substantial effect of) that Plaintiff, as a tenant, could not be unilaterally locked out of his home without proper notice or following the eviction laws, as self-help evictions are not permitted in California.

20.     In late March of 2024, Plaintiff left Los Angeles for a business trip. Plaintiff contacted the Association via text message prior to his return to determine whether or not Zheng had changed the locks on the front door of the Condo—ultimately to ensure that Plaintiff was not locked out. The Association replied that they are unaware of any changes; and to their knowledge nothing had changed, i.e., Plaintiff was still a resident. When Plaintiff returned from the business trip on April 24, 2024, however, Plaintiff came home to learn that his electronic fob access to enter the building and access the elevators and the common areas had been deactivated, all without any prior notice whatsoever. Plaintiff once again called the police, this time to report an unlawful eviction. Despite knowing that Plaintiff was and is a *bona fide* resident, the Association told the police that their computer system was not showing that Plaintiff was or is a resident—ever! The front desk staff, who are agents of the Association, told Plaintiff "it looks as if management tried to completely erase you from the system as never being a resident or living here."

21.     On information and belief, Zheng and/or his agents instructed the Association to deny Plaintiff access to the Condo (by among other things, deactivating the access fob to enter the building and to access the common areas, elevators, and hallways that lead to the Condo's front door), even

though he was a lawful tenant, resident, and occupant with a possessory interest in the Condo. Moreover, Zheng instructed the Association to deny Plaintiff fob access even though the Los Angeles Police Department informed Zheng and the management and staff of the Association that it was unlawful. Plaintiff subsequently learned that Zheng had previously hired a realtor to list the Condo for rent at a rate of $4,750 per month, as early as January 2024, confirming that Plaintiff was forever ousted from the Condo and would not be allowed to return. In the listing posted on April 9, 2024, Zheng's listing agent posted 29 images of the condo; from these images it is evident that Zheng removed all of Plaintiff's personal possessions form the condo while Plaintiff was away on an extended business trip. Plaintiff had personal property in the Condo including his entire wardrobe, small appliances, important documents, social security card, automobile title/registration, and personal possessions he had purchased for between $15,000 and $20,000, which Zheng stole from him and refused to return.

### ZHENG ALSO RETALIATED BY STEALING PLAINTIFF'S 2020 RANGE ROVER SUV

22.     In addition to providing Plaintiff with the Condo, on August 26, 2023, Zheng purchased a vehicle for Plaintiff, a 2020 Land Rover, Range Rover (VIN: SALGS4RY3LA589657). The total sale price of the vehicle is listed on the sale contract at $45,000.01. However, on February 15, 2024, in text communications from Zheng to Plaintiff, Zheng stated that he "paid a total of U.S. $76,000.00" for the Range Rover, and that Zheng "could prove this by showing the bank transaction."

23.     Zheng purchased the Range Rover for Plaintiff and Plaintiff and Zheng were co-owners on the title and registration. In several text conversations, Zheng repeatedly conveyed that he "purchased the Range Rover for [Plaintiff]," that "it is [Plaintiff's] car," and that "[Plaintiff] did not need to purchase another car because this Range Rover is for him" … Plaintiff was listed as the co-registered owner of the vehicle but on information and belief, Zheng and/or his agents changed the title into Zheng's name only without Plaintiff's knowledge or consent. A true and correct copy of the Range Rover registration showing Plaintiff as co-owner is attached to this Complaint as **Exhibit A** and incorporated herein by reference. Furthermore, the Range Rover was solely insured in Plaintiff's name, which Plaintiff made monthly payments for.

**PLAINTIFF IS ENTITLED TO BE COMPENSATED FOR PROVIDING 24/7 CARE FOR ZHENG'S SON**

24. Plaintiff was more than just Zheng's tenant and romantic partner. Plaintiff agreed to care for Zheng's three-year old son **full-time** (Zheng's son was 3 at the point in time for which the Plaintiff started providing care, and 5 at the point in time when Zheng took his son back). Zheng accepted childcare services from Plaintiff with the knowledge and understanding that Zheng would financially compensate Plaintiff and cover all expenses. Zheng also agreed to seek treatment for being an abusive parent, but he did not.

25. Zheng agreed to compensate Plaintiff for caring for Zheng's son. Plaintiff worked for Zheng for nearly 15 months, caring for Zheng's son 24 hours a day, 7 days a week. Plaintiff is entitled to compensation for that entire period. Plaintiff also incurred expenses necessarily and reasonably to care for Zheng's son.

26. Between Zheng's invasion of Plaintiff's privacy, retaliatory eviction, stolen possessions, theft of the Range Rover, and caretaking of Zheng's son for 16-months until Zheng abruptly took him away from Plaintiff—without even giving Plaintiff or the son an opportunity to say goodbye to each other—Plaintiff has suffered severe emotional distress from Zheng's extreme and outrageous conduct.

### FIRST CAUSE OF ACTION

### (RETALIATORY EVICTION V. ZHENG (CIV. CODE § 1942.5))

27. Plaintiff repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

28. On or about May 8, 2023, at Zheng's request, Plaintiff and Zheng entered into an oral tenancy-at-will agreement under which Zheng permitted Plaintiff to live in the Condo "for as long as Plaintiff liked."

29. Under said agreement, Plaintiff obtained possession of the Condo on May 9, 2023, and continued in possession until April 2024, when Plaintiff discovered that the Association locked Plaintiff out of access to the Condo without notice or any legal process. On information and belief, Zheng and/or his agents instructed the Association to remove Plaintiff as a resident and disable his key fob—so he could not enter the building, access the hallways/mailroom/gym/pool, or use the elevators to access the front door of his condo—all prior to Plaintiff's discovery of the lockout upon returning from time away

from home.

30. Plaintiff was not during the period of his tenancy in default as to or any obligation he owed to Zheng.

31. Zheng's self-help lockout without notice was in retaliation for Plaintiff's discovery of the spy camera in Plaintiff's bedroom, an uninhabitable condition of the Condo.

32. As a proximate result of retaliatory eviction, Plaintiff incurred damages in an amount to be established according to proof at trial. Categories of damages include but are not limited to, loss of use of the Condo continuing day to day until possession is restored (Zheng posted the Condo for rent at $4,750 per month), loss of personal property, pain and suffering, mental anguish, having to purchase new clothing, etc.

33. Zheng's acts were willful, malicious, and oppressive, amounting to despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights so as to entitle Plaintiff to an award of punitive and exemplary damages in an amount to be determined at trial.

34. Additionally, Civil Code Section 1942.5(h) provides that in any action brought for damages for retaliatory eviction, the Court must award reasonable attorney fees to the prevailing party.

### SECOND CAUSE OF ACTION

#### (UNLAWFUL SELF-HELP EVICTION V. ZHENG (CIV. CODE § 789.3))

35. Plaintiff repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

36. In or about April, 2024, with the intent to terminate Plaintiff's tenancy of the Condo, Zheng willfully and maliciously, directly and indirectly, prevented Plaintiff from gaining reasonable access to the Unit by instructing the Association that Plaintiff was no longer a lawful resident of the Unit, effectively denying Plaintiff the ability to access the fourth floor by use of the elevators or stairs.

37. On information and belief, Zheng and/or his agent instructed the Association, as Zheng's agent, to deprive Plaintiff of key fob access to enter the building, and use elevators and common areas of the building, such that Plaintiff could not enter the fourth floor to his condo, the mail room, or have use of the premises afforded to all residents.

38. Plaintiff discovered that he was prevented from accessing the Condo on April 24, 2024. On information and belief, Zheng effected the self-help lockout and listed for Condo for rent as early as January 2024.

39. As a direct and proximate result of Zheng's self-help eviction Plaintiff has suffered and is suffering damages in an amount to be established according to proof at trial.

40. Plaintiff is entitled to statutory punitive damages under Civil Code Section 789.3(c) in the amount of $100 for each day or part of a day that Zheng remains in violation of Civil Code Section 789.3(b) and in no event is Plaintiff entitled to less than $250 for each cause of action.

**THIRD CAUSE OF ACTION**

**(BREACH OF THE COVENANT OF QUIET ENJOYMENT V. ZHENG)**

41. Plaintiff repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

42. At all times relevant herein, Civil Code section 1940.2(a)(3) made it unlawful for a landlord to "use, or threaten to use, force, willful threats, or menacing conduct constituting a course of conduct that interferes with the tenant's quiet enjoyment of the premises."

43. At all times relevant herein, Civil Code section l940.2(a)(4) made it unlawful for a landlord and their agents to, to "commit a significant and intentional violation of Section 1954 [of the Civil Code]."

44. At all times relevant herein, Civil Code section 1954 made it unlawful for a landlord to make an unauthorized entry into a rented premises or to harass a tenant.

45. Zheng engaged in a course of conduct meant to interfere with Plaintiff's quiet enjoyment of his home through conduct including but not limited to Zheng spying on him in his bedroom through use of an internet-connected hidden smart camera without Plaintiff's knowledge or permission, instructing the Association to deny Plaintiff access to the elevators and tenant common areas in the Condo, and converting, stealing, and/or destroying Plaintiff's belongings and personal property purchased between $15,000 and $20,000 which were in the Condo at the time Plaintiff was wrongfully and unlawfully evicted without notice.

46. A tenant who prevails in a claim under Civil Code section 1940.2 is entitled to a civil

penalty of up to $2,000 for each violation.

47. Plaintiff seeks civil penalties, compensatory damages, special damages, punitive damages, attorneys' fees and costs to be established according to proof.

## FOURTH CAUSE OF ACTION

### (TRESPASS V. ZHENG)

48. Plaintiff repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

49. On information and belief, Zheng and/or his respective agents, servants, employees and authorized representatives, without consent or notice, entered into the Condo to seize and convert Plaintiff's personal property and belongings and to lock him out of the Condo.

50. Zheng's conduct constituted a trespass onto Plaintiff's property.

51. As a direct and proximate cause of Zheng's actions and inactions, Plaintiff suffered and/or continues to suffer actual and consequential damages, including out-of-pocket costs and property damage in amount to be determined according to proof.

52. As a direct and proximate cause of Zheng's conduct, Plaintiff lost use of the Condo and suffered emotional and financial damages, including, but not limited to, suffering from anxiety depression, emotional distress, diminished quality of living conditions, social isolation, and ridicule, as well as loss of health.

53. Defendants' acts were willful, malicious, and oppressive, amounting to despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights so as to entitle Plaintiff to an award of punitive and exemplary damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (CONVERSION V. ZHENG – PERSONAL PROPERTY IN THE CONDO)

54. Plaintiff repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

55. At all times herein mentioned, and in particular on or about April 24, 2024 (when Plaintiff discovered he could no longer access the Condo), Plaintiff was, and still is entitled to the possession of the personal property that was in the Property. The personal property was purchased for a value between

$15,000 and $20,000.

56.    In or about April 2024, Zheng and/or his agents took the property described above from Plaintiff's possession and converted the same to their own use.

57.    On or about May 15 and 20, 2024, Plaintiff (via counsel) demanded in writing the immediate return of the above-mentioned personal property, but to date Zheng has failed to return the personal property to Plaintiff.

58.    As a direct and proximate cause of Zheng's actions and inactions, Plaintiff suffered and/or continues to suffer actual and consequential damages equal to the value of the personal property in amount to be determined according to proof.

59.    Zheng's acts were willful, malicious, and oppressive, amounting to despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights so as to entitle Plaintiff to an award of punitive and exemplary damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### (CONVERSION V. ZHENG – RANGE ROVER)

60.    Plaintiff repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

61.    At all times herein mentioned, and in particular on or about April 24, 2024, Plaintiff was, and still is entitled to ownership and possession of the Range Rover.  The Range Rover has a fair market estimated value between $51,000 and $62,000.

62.    On or about April 24, 2024, Zheng removed Plaintiff from title to the Range Rover without Plaintiff's knowledge or consent and converted the same to his sole name. Upon information and belief, Zheng had a friend or co-conspirator (the identity of whom is currently unknown to Plaintiff), take the Range Rover away from where it was securely parked at Plaintiff's office parking lot, thereby depriving Plaintiff of the use of the Range Rover.

63.    On or about May 15, 2024, Plaintiff, through counsel, demanded in writing the immediate return of the Range Rover but Zheng failed and refused, and continues to fail and refuse, to return the Range Rover to Plaintiff.

64.    As a direct and proximate cause of Zheng's actions, Plaintiff suffered and/or continues to

TRÉPANIER
TAJIMA LLP
LOS ANGELES

Case No. _____                    12

VERIFIED COMPLAINT

suffer actual and consequential damages equal to the value of the Range Rover in amount to be determined according to proof.

65. Zheng's acts were willful, malicious, and oppressive, amounting to despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights so as to entitle Plaintiff to an award of punitive and exemplary damages in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION

### (INVASION OF PRIVACY V. ZHENG (CIV. CODE § 1708.8))

66. Plaintiff repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

67. On November 2, 2023, Plaintiff discovered a smart camera hidden in the air conditioning vent in his bedroom at the Condo with a blinking light, demonstrating that it was live and working. The hidden camera was connected to the internet and a power source from the outlet below and hidden by the very large, wall-mounted television. The smart camera was directly facing the Plaintiff's bed, and had 360° coverage, with human/motion detection, permitting Zheng to view the Plaintiff in any area of his bedroom and certain bathroom areas, where Plaintiff was likely to be undressed. The camera could livestream video and voice, as well as record and store videos. Horrified, Plaintiff immediately took pictures of the location of the camera in the air conditioning vent, disconnected the camera, and unplugged the modem and router from the power source so that the internet connection would be disabled at the Condo.

68. The intrusion was offensive to Plaintiff and to a reasonable person of ordinary sensibilities in that it captured video footage of Plaintiff dressing, undressing, sleeping and otherwise during times in which Plaintiff had a reasonable expectation of privacy in his bedroom.

69. As a direct and proximate cause of Zheng's conduct, Plaintiff suffered and/or continues to suffer actual and consequential damages in amount to be determined according to proof.

70. As a direct and proximate cause of Zheng's conduct, Plaintiff suffered emotional and financial damages, including, but not limited to, suffering from anxiety depression, emotional distress, diminished quality of living conditions, humiliation, as well as loss of health.

71. Zheng's actions were willful, malicious, and oppressive, amounting to despicable conduct

TRÉPANIER
TAJIMA LLP
LOS ANGELES

Case No. _____

13

VERIFIED COMPLAINT

that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights so as to entitle Plaintiff to an award of punitive and exemplary damages in an amount to be determined at trial.

### EIGHTH CAUSE OF ACTION

#### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS V. ZHENG)

72. Plaintiff repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

73. On or about November 2, 2023, Plaintiff discovered a video camera hidden in the air conditioning vent in his bedroom. In or about April 2024, Zheng locked Plaintiff out from access to the Condo and stole Plaintiff's Range Rover, depriving Plaintiff of his home, his entire wardrobe, and vehicular transportation. Zheng failed and refused to return Plaintiff's personal property or the Range Rover despite Plaintiff's written demand. Moreover, Zheng abruptly took Zheng's biological child away from Plaintiff, the child's fulltime caregiver for 15 months, without even giving Plaintiff an opportunity to say goodbye.

74. As a direct and proximate cause of Zheng's conduct, Plaintiff suffered severe emotional distress and financial damages, including, but not limited to, suffering from anxiety, depression, emotional distress, diminished quality of living conditions, humiliation, as well as loss of health. Out of pocket damages include ride share expenses, such as Uber and Lyft, as well as the purchase of a replacement vehicle.

75. Zheng's conduct was extreme, outrageous, intentional, and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress. Zheng's conduct was done with knowledge that Plaintiff's emotional and physical distress would thereby increase and was done with a wanton and reckless disregard of the consequences to Plaintiff.

76. Zheng's actions were willful, malicious, and oppressive, amounting to despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights so as to entitle Plaintiff to an award of punitive and exemplary damages in an amount to be determined at trial.

### NINTH CAUSE OF ACTION

#### (CLAIM AND DELIVERY V. ZHENG)

77. Plaintiff repeats, repleads, and incorporates by reference, as though fully set fort

in this paragraph, all the allegations of this Complaint.

78. Plaintiff is the owner of the personal property that was present in the Condo at the time Plaintiff was locked out of the Condo in or about April 2024.

79. Plaintiff is entitled to immediate possession of the personal property.

80. Zheng has no right to current possession of the personal property.

81. Zheng is aware of Plaintiff's right to possession of the personal property but refused to comply by returning the personal property to Plaintiff.

82. Plaintiff's personal property was located at 6250 Hollywood Boulevard, Hollywood, California, Unit 4k. Plaintiff is informed and believes that Zheng caused the personal property to be removed from Unit 4k.

83. Plaintiff purchased the personal property for between $15,000 and $20,000.

84. Plaintiff is informed and believes, and thereon alleges, that the personal property has not been taken for a tax assessment or fine pursuant to statute or seized under any execution against the property of Zheng.

### TENTH CAUSE OF ACTION

### (BREACH OF CONTRACT V. ZHENG – CHILDCARE)

85. Plaintiff repeats, repleads, and incorporates by reference, as though fully set fort in this paragraph, all the allegations of this Complaint.

86. Plaintiff and Zheng entered into an oral or implied in fact contract, the terms of which provided that Plaintiff would provide full-time round the clock care to Zheng's son. In exchange, Zheng agreed to obtain treatment for his abusive behavior and compensate Plaintiff for his time and expenses incurred to care for Zheng's son. On or about October 10, 2023, Plaintiff invoiced Zheng for his time and expenses to date of $343,908.12. After receiving the invoice stating the time and rate, Zheng continued to accept childcare services from Plaintiff. Significant additional childcare fees and expenses were incurred through February 2024.

87. Zheng did not pay any of Plaintiff's reasonable and necessary time and expenses as agreed. Zheng did not pay Plaintiff anything for the childcare work.

88. As a result of Zheng's breach of contract, Plaintiff has been damaged to be established

TRÉPANIER
TAJIMA LLP
LOS ANGELES

Case No.                                                          15
VERIFIED COMPLAINT

according to proof.

## ELEVENTH CAUSE OF ACTION

### (PROMISSORY ESTOPPEL V. ZHENG – CHILDCARE AND RANGER ROVER)

89.     Plaintiff repeats, repleads, and incorporates by reference, as though fully set fort in this paragraph, all the allegations of this Complaint.

90.     In or about December, 2022 Zheng agreed to compensate Plaintiff for the time an expense of caring for Zheng's son full time, twenty-four hours a day. Additionally, on or about August 23, 2023, Zheng promised and represented to Plaintiff that he was purchasing the Range Rover for Plaintiff.

91.     In making the foregoing promises, Zheng knew or should have known that Plaintiff would be reasonably induced to care for Zheng's son full time and rely on having the Range Rover to use as a primary vehicle, which Plaintiff also used to take Zheng's son to school and pick his up from school Monday through Friday.

92.     Zheng has not performed his promises and representations to provide Plaintiff with a home and vehicle.

93.     As a proximate result of Zheng's failure to perform according to his promises and representations that he made to Plaintiff, Plaintiff has incurred damages in an amount to be established according to proof at trial.

94.     Injustice can be avoided only by enforcing Zheng's promises and representations completely.

## TWELFTH CAUSE OF ACTION

### (QUANTUM MERUIT V. ZHENG – CHILDCARE)

95.     Plaintiff repeats, repleads, and incorporates by reference, as though fully set fort in this paragraph, all the allegations of this Complaint.

96.     Between November 2022 and February 2024, Plaintiff cared for Zheng's son full-time, twenty-four hours a day at the special request of Zheng. Zheng knew that these services were being provided and promised to pay their reasonable value and Zheng accepted, used, and enjoyed the services provided by Plaintiff.

TRÉPANIER
TAJIMA LLP
LOS ANGELES

Case No. _____

16

VERIFIED COMPLAINT

97.    The fair and reasonable value of the services Plaintiff provided to Zheng for childcare will be proven at trial.

98.    Zheng has failed and refused, and continues to fail and refuse, to reimburse Plaintiff for the reasonable and customary value of Plaintiff's services as required.

### THIRTEENTH CAUSE OF ACTION

### (COMMON COUNT: GOODS AND SERVICES RENDERED V. ZHENG – CHILDCARE)

99.    Plaintiff repeats, repleads, and incorporates by reference, as though fully set fort in this paragraph, all the allegations of this Complaint.

100.    Zheng requested, by words and/or conduct, that Plaintiff care for Zheng's son while Zheng was living in Portugal or on extended business in China and Greece.

101.    Plaintiff performed the services as requested, including incurring reasonable and necessary expenses for the child;

102.    Zheng has not paid Plaintiff any sums for the services Plaintiff provided to Zheng;

103.    The reasonable value of the goods and services provided will be established according to proof.

### FOURTEENTH CAUSE OF ACTION

### (UNFAIR COMPETITION V. ALL DEFENDANTS (BUS. & PROF. CODE § 17200, ET SEQ.)

104.    Plaintiff repeats, repleads, and incorporates by reference, as though fully set forth in this paragraph, all the allegations of this Complaint.

105.    Defendants' acts alleged herein are acts of unfair and unlawful competition within the meaning of Business and Professions Code Section 17203. Plaintiff is informed and believes that Defendants will continue to do those acts unless the court orders Defendants to cease and desist.

### FIFTEENTH CAUSE OF ACTION

### (NEGLIGENCE V. ALL DEFENDANTS)

106.    Plaintiff repeats, repleads, and incorporates by reference, as though fully set fort in this paragraph, all the allegations of this Complaint.

107.    The Association owes a duty of care to Plaintiff in the management of the W Residences to avoid foreseeable injury to others, especially the residents.

TRÉPANIER
TAJIMA LLP
LOS ANGELES

Case No.                                                                          17
VERIFIED COMPLAINT

108. Zheng owes a duty of care to Plaintiff to generally avoid causing foreseeable injuries to Plaintiff in their course of dealing.

109. On and since April 24, 2024, the Association and Zheng breached their duties of care owed to Plaintiff by denying Plaintiff access to the building, elevators and tenant-only areas of the W Residences, refusing to permit Plaintiff to retrieve his personal property in the Condo (which, on information and belief, has since been removed by Zheng and/or his agents), denying Plaintiff access to his mail in the mailroom (which is inside the building), and entirely erasing (or claiming to erase) any mention of Plaintiff from the Association's computer system, despite knowing that Plaintiff had lived in the Condo since May 9, 2023, and despite receiving express instructions from the Los Angeles Police Department on February 15, 2024 not to lock out Plaintiff without notice or following the legal process as stated in California's eviction laws.

110. Defendants' breach of duty actually and proximately caused Plaintiff economic and noneconomic damages to be established according to proof at trial. Such damages include but are not limited to the loss of Plaintiff's personal property in the Condo, loss of use of the Condo, and Plaintiff's severe emotional distress and embarrassment resulting from being wrongfully locked out of his home.

## **PRAYER**

WHEREFORE, Plaintiff demands judgment against Defendants for:

A. As to the Association, general and special damages in an amount to be determined;

B. As to Zheng, general, special, exemplary, consequential, treble, and punitive damages in an amount to be determined;

C. As to Zheng, for an injunction:

    a. Instructing Zheng to deliver Plaintiff's personal property that was in the Condo to Plaintiff;

    b. Prohibiting Zheng and his principals, agents, employees and other representatives from hiding, secreting, selling or otherwise making the personal property unavailable;

    c. Prohibiting Zheng and his principals, agents, employees and other representatives from diverting, commingling, depositing, spending or otherwise disposing of the personal property or its proceeds and from doing anything with the personal property or its

proceeds other than delivering or paying them over to Plaintiff;

    d.  Prohibiting Zheng and his principals, agents, employees and other representatives from transferring possession of or selling Plaintiff's personal property that was in the Condo;

D.    As to Zheng, for reasonable attorney's fees pursuant to Civil Code section 1942.5(h) and/or other applicable law;

E.    As to Zheng, for civil penalties pursuant to Civil Code sections, 1708.8, 1940.2(b), and/or other applicable law; and

F.    As to both Defendants, for costs of suit;

G.    For such further and other relief as the Court finds appropriate.

Dated:  July 16, 2024

TRÉPANIER TAJIMA LLP

_____

Chase T. Tajima
Gregory E. Eisner
Attorneys for Plaintiff Matthew Mimiaga
.

## VERIFICATION

Plaintiff M.M makes the following verification:

1.    I have reviewed the foregoing complaint.

2.    Regarding the allegations of which I have personal knowledge, I know or believe them to be true.

3.    As to the facts stated on information and belief, I am informed and believe them to be correct.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification was executed on July 5, 2024 at Los Angeles, California.

_____

M.M.

# EXHIBIT A

